Filed 7/10/24  P. v. Tamayo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082181 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD291133) |
| CESAR HUGO TAMAYO, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed.

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Alana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

After Cesar Hugo Tamayo pled guilty to attempted carjacking (Pen. Code,[1] §§ 664, 215, subd. (a)) with an elderly victim enhancement (§ 667.9, subd. (a)) and admitted suffering a prior strike offense, the trial court denied his request under section 1385, subdivision (c), to dismiss the prior strike offense and sentenced him to a six-year prison term. Tamayo claims the court misapplied section 1385, subdivision (c). Finding no merit to the claim, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Tamayo's Current Offense*[2]

On July 12, 2021, 73-year-old Irvin T. was in a parking lot sitting in the front seat of his car when Johan Figueroa (Tamayo's codefendant) approached and asked for a cigarette. As Irvin began to respond, Figueroa grabbed Irvin's arm and pulled him out of the car. Irvin landed on the ground. Figueroa punched Irvin in the face with a closed fist about five or six times and demanded the keys to the car. As Figueroa was punching Irvin, Tamayo went to the passenger side of the car. Figueroa took Irvin's wallet and car keys. Figueroa and Tamayo ran away when Irvin's son, who was in the parking lot, ran over to his father. Irvin sustained severe swelling to his right and left eyes, cheek, and forehead, as well as swelling and a three-inch abrasion to his right arm.

---

[1]   Unspecified statutory references are to the Penal Code.

[2]   Tamayo was convicted by his guilty plea, and there was no preliminary hearing. Our factual summary is derived from the stipulated factual basis for his guilty plea and the probation report.

At the time he committed this offense, Tamayo was 18 years old and was on juvenile probation. On August 11, 2021, Tamayo reported to his probation officer and was arrested by police. He told officers he did not remember the offense and that he was "probably pretty fucked up" because since getting out of juvenile hall he had "been doing a lot of Xanax."

Tamayo was charged with attempted carjacking (§§ 664, 215, subd. (a); count 1); robbery (§ 211; count 2); and elder abuse (§ 368, subd. (b)(1); count 3). An elderly victim enhancement (§ 667.9, subd. (a)) was alleged as to counts 1 and 2. An enhancement for inflicting great bodily injury upon a person 70 years of age or older (§ 12022.7, subd. (c)) was alleged as to all counts. It was also specially alleged that Tamayo had sustained a prior juvenile adjudication that qualified as a prior strike offense (§§ 667, subds. (b)–(i), 1170.12, 668).

In May 2022, pursuant to a negotiated plea agreement, Tamayo pled guilty to the charges in count 1 of attempted carjacking and admitted he committed the offense against an elderly victim. He admitted he "attempted to take a vehicle from another with force and fear against the person's will and in doing so, attempted to deprive the owner of the vehicle of possession of the vehicle." At the change of plea hearing, he further admitted he had a prior strike conviction.

## II.

### *Tamayo's Prior Strike Offense*[3]

The presentence report prepared by the probation department included the following information about Tamayo's prior strike offense. On November 28, 2020 (when Tamayo was 17 years old), Alexander C., a pizza delivery

---

[3]    Juvenile adjudications may be used as prior strikes under the Three Strikes law. (*People v. Nguyen* (2009) 46 Cal.4th 1007, 1019.)

driver, had just entered his delivery vehicle when Tamayo approached and asked for change for "a fifty[.]" Alexander agreed. After he exited his vehicle and reached into his pocket to give Tamayo change, Tamayo pulled out a handgun and said, "Give me everything you have!" Alexander replied, "That's all I got." Two males in white hoodies then approached. One pointed a "silver/chrome pistol" with an orange tip at Alexander that Alexander thought was fake. Suspecting the males' pistols were not real, Alexander grabbed Tamayo's arm and pushed him to the side. One of the males wearing a white hoodie pulled a gold chain from Alexander's neck and took his car keys, pocketknife, and $20. The other male wearing a white hoodie punched Alexander in the eye, causing him to fall to the ground. Tamayo and the two males fled on foot. Alexander suffered a fractured right orbital bone, a fractured tooth and five chipped teeth.

Tamayo reportedly participated in two other attempted or completed robberies that same day. He was charged in juvenile court with four counts, the first of which pertained to the robbery of Alexander. In December 2020, he admitted the robbery (§ 211) of Alexander, together with a prior serious felony allegation (§ 1192.7, subd. (c)(23)); an allegation of personal use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)); and an allegation of personal use of a firearm in the commission of a felony (§ 12022.53, subd. (b)). In January 2021, he was committed to 250 days in Urban Camp. He was released on June 7, 2021, and committed the current attempted carjacking offense just over one month later.

## III.

### *Sentencing Hearing*

On April 10, 2023, Tamayo submitted a sentencing statement in which he requested the trial court to dismiss his prior strike offense pursuant to

Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, §1). He argued that section 1385, subdivision (c) (the provision enacted by the passage of Senate Bill No. 81), authorized the dismissal of prior strikes. He sought to demonstrate several of the mitigating factors in that provision applied to his case.

First, he contended his young age at the time of the strike as well as the current conviction was a substantial mitigating factor under subdivision (c)(2)(G) of section 1385. Second, he asserted he suffered prior childhood trauma, including because his mother was an addict who tested positive for amphetamines when he was born, and that this was a substantial mitigating factor under subdivision (c)(2)(E) of section 1385. Third, he asserted he also struggled with substance abuse, which he argued was a recognized mental illness and a substantial mitigating factor under subdivision (c)(2)(D) of section 1385. Fourth (and fifth), he asserted that attempted carjacking was not a violent felony (*id.*, subd. (c)(2)(F)) and that he faced multiple enhancements (*id.*, subd. (c)(2)(B)). In support of these positions, he submitted a psychological evaluation prepared in December 2020 that found his risk of violent recidivism to be between low and moderate, as well as a juvenile probation social study that detailed his mother's neglectful and emotionally abusive behavior. He sought probation or, alternatively, a low term sentence.

The prosecution opposed Tamayo's request to dismiss the prior strike, which it labeled as a *Romero* motion[4] although without disputing that section 1385, subdivision (c), authorized dismissal of a strike. It argued Tamayo was a danger to the public under subdivision (c)(2) of section 1385 based on the

---

4      *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

violent nature of the attempted carjacking, and because he participated in the attempted carjacking while on juvenile probation from his prior juvenile case, which involved three robberies where guns were used and a victim suffered physical injuries.  The prosecution asked the court to select the middle term for the attempted carjacking and impose a total sentence of six years.

At the April 2023 sentencing hearing, the trial court stated it had "read and digested" Tamayo's statement in mitigation, his "*Romero* motion . . . with a lot of information, a lot of psych information, a lot of juvi information," as well as the prosecutor's opposition.  After hearing arguments from defense counsel and the prosecutor, the court asked them to provide the sentencing triad on attempted carjacking so it could understand how the prosecutor had calculated the recommended six-year sentence.  Specifically, the court asked, "The six years [is] coming from the low term doubled?  What's the sentencing triad on the attempt . . . ?"  The court stated it wanted to "get to six."  The prosecutor responded that the relevant triad was "Eighteen months.  Two and a half [years].  And then four and a half [years]."  Defense counsel asked, "So the six would be imposing the midterm as well as the enhancement [under section 12022.7, subdivision (c), for inflicting great bodily injury on an elderly victim]?"  The court responded, "Right."

The trial court then denied the defense request to dismiss the prior strike.  The court explained that Tamayo was "a two-time violent felon," and that it found nonviolent felons who were addicts to be different from addicts who were "involved in this type of violent behavior that's truly destructive to society."  It stated:  "Clearly you're very young, and that is going to keep you at the low term.  But after going over all of the detailed information in the *Romero* motion . . . , specifically young age, prior childhood trauma, mental

6

illness, going through the psych eval . . . [¶] . . . I'm just not swayed to strike the strike." The court explained, "The acts in this case were violent. The acts in the case before were violent. There were multiple victims in the juvenile strike. They happened too close in time." The court then denied probation and sentenced Tamayo to "the midterm of two and a half years, double because of the strike for five, plus the one-year enhancement for six."

## DISCUSSION

Tamayo contends reversal of his sentence is required because the trial court "misapplied" (boldface and capitalization omitted) section 1385, subdivision (c), in denying his request to dismiss his prior strike. "[S]ection 1385, subdivision (c)(1) . . . provides that 'the court shall dismiss an enhancement if it is in the furtherance of justice to do so,' and subdivision (c)(2) states that '[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence' of nine listed 'mitigating circumstances,' any 'one or more' of which 'weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.' " (*People v. Mazur* (2023) 97 Cal.App.5th 438, 443–444, review granted Feb. 24, 2024, S283229 (*Mazur*).)

" 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) When determining whether dismissal of an enhancement would endanger public safety, a court must consider not just a defendant's current dangerousness but also his future dangerousness, keeping in mind "how the dismissal of the enhancement will impact the length of the defendant's sentence." (*People v. Gonzalez* (June 27, 2024, D082058) ___ Cal.App.5th ___ [2024 Cal.App.Lexis 409, *16] (*Gonzalez*).)

The mitigating circumstances that weigh greatly in favor of dismissal unless the court finds dismissal would endanger public safety include that multiple enhancements are charged in a single case (§ 1385, subd. (c)(2)(B)), "[t]he current offense is connected to mental illness" (*id.*, subd. (c)(2)(D)), "[t]he current offense is connected to . . . childhood trauma" (*id.*, subd. (c)(2)(E)), "[t]he current offense is not a violent felony as defined in subdivision (c) of section 667.5" (*id.*, subd. (c)(2)(F)), and the defendant's status as a juvenile at the time of any prior offenses that trigger the enhancement (*id.*, subd. (c)(2)(G)).

To date, courts have interpreted section 1385, subdivision (c), as applying only to sentencing enhancements and not to the Three Strikes law, on the ground the Three Strikes law is an alternative sentencing scheme and not a sentencing enhancement. (See e.g., *People v. Burke* (2023) 89 Cal.App.5th 237, 243 (*Burke*); *People v. Olay* (2023) 98 Cal.App.5th 60, 66–69, review denied (Mar. 12, 2024, S283633); *People v. Dain* (2024) 99 Cal.App.5th 399, 410–411, review granted May 29, 2024, S283924.)  To establish the trial court in this case erred when it declined to dismiss his prior strike conviction pursuant to section 1385, subdivision (c), Tamayo faces the initial difficulty of establishing the validity of a position other courts have rejected, namely, that section 1385, subdivision (c), does, in fact, authorize the dismissal of prior strikes.  In his opening brief on appeal, supplemented by arguments in his reply brief, he presents a number of points in an effort to demonstrate that this is so, and that the courts that have decided otherwise are wrong.

We need not address these arguments, however.  Tamayo asserts, and we agree, that notwithstanding the existence of case law holding that section

1385, subdivision (c), does not apply to the Three Strikes law,[5] at Tamayo's sentencing hearing defense counsel, the prosecutor, and the trial court all operated under the belief that it did. As we will explain, even if we assume section 1385, subdivision (c), does authorize the dismissal of prior strikes, Tamayo fails to establish that the court misapplied it in his case.

Tamayo's contention that the trial court misapplied section 1385, subdivision (c), boils down to a two-part claim: (1) the court failed to find, pursuant to the statute's "endanger public safety" clause, a likelihood that dismissal of his strike would result in future physical injury or serious danger to others (see *id.*, subd. (c)(2)); (2) the court also failed to "afford great weight" (*ibid.*) to Tamayo's evidence of mitigating factors. However, under section 1385, subdivision (c)(2), if a court "finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296, fn. omitted (*Mendoza*).) The second part of Tamayo's claim therefore becomes pertinent only to the extent he succeeds in establishing the first part of his claim—which he fails to do.

Tamayo's claim the trial court misapplied the "endanger public safety" clause relies entirely on the court's comments during its sentencing colloquy. Tamayo contends the words spoken by the court reveal that it failed to find the requisite "likelihood" of future "physical injury or other serious danger to others" (§ 1385, subd. (c)(2)) and that it therefore violated "the letter and spirit of the law" (*People v. Willover* (2016) 248 Cal.App.4th 302, 323).

---

[5] *Burke*, *supra*, 89 Cal.App.5th 237, the first case to hold that section 1385, subdivision (c), did not authorize dismissal of prior strikes, was decided on March 13, 2023, approximately six weeks before Tamayo's April 27, 2023 sentencing hearing.

"[A]buse of discretion is the proper standard of review for the trial court's determination that dismissal of [an] enhancement would endanger public safety." (*Mendoza*, *supra*, 88 Cal.App.5th at p. 298.)  An abuse of discretion occurs when a trial court is not aware of the scope of its sentencing discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)  In evaluating Tamayo's claim that the trial court in this case erred and misapplied section 1385, subdivision (c)(2), we apply the general rule " 'that a trial court is presumed to have been aware of and followed the applicable law.' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; see *People v. Mosley* (1997) 53 Cal.App.4th 489, 496 [the "presumption of regularity of judicial exercises of discretion appl[ies] to sentencing issues"].)  "Error may not be presumed from a silent record." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229.)  And "[w]hen there is 'no explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to the sentence it imposed[.]' " (*People v. Kelly* (2018) 28 Cal.App.5th 886, 904.)  Ultimately, " 'it is defendant's burden on appeal to affirmatively demonstrate error[.]' " (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.)

Applying these principles here, we conclude Tamayo fails to establish that the trial court erred.  We are not persuaded the court misapplied the "endanger public safety" clause as Tamayo contends.  This is what the court said:

> "[A]s I listen to the arguments and having the perspective I have sitting up here, those were really good arguments for the legislation that was passed for mandatory supervision.  Those were changes in the law where we had to take nonviolent felons and start treating them like people and not numbers so we could make society better and rehabilitate individuals, which was a nice change and a nice wake-up call for everyone involved in the justice system.

"I hear almost those exact same arguments here, but now they're geared towards <u>a violent felon, a two-time violent felon</u>. It makes sense to the [c]ourt to give non-violent felons -- because this [c]ourt has seen a myriad of addicts, and they're addicts, and it's because of their youth, because of their illness, because of how they grew up, they turn to drugs at an early age. And it's understandable as to why it happened and it's sad. And those addicts have a very difficult time digging themselves out of a hole or staying clean for multiple periods of time.

"But the addicts that I see are addicts and yeah, sometimes they steal. Every once in a while they'll get in a scuffle, but <u>they're not involved in this type of violent behavior that's truly destructive to society. And there are multiple victims who now are scarred psychologically</u> such that the [c]ourt -- it's difficult for the [c]ourt to say, Look, there is mental illness here.

"Clearly, you're very young, and that is going to keep you at the low term. But after going over all of the detailed information in the *Romero* motion and the sentencing statement, specifically young age, prior childhood trauma, mental illness, going through the psych eval, which I took a very close look at Mr. Tamayo, but didn't necessarily give a lot of look as to exactly what happened here and in the past. <u>They put him at a low to moderate risk, which I disagree with</u>.

"Having looked at all that, the character letters by family, I'm just not swayed to strike the strike. <u>The acts in this case were violent. The acts in the case before were violent. There were multiple victims in the juvenile strike. They happened too close in time.</u>

"And . . . the only thing that's super mitigant is -- not only by law, but factually, is his age. But I'm not compelled at this time, nor after weighing all factors do I feel comfortable striking the strike. So the strike remains and I will sentence him." (Underscore added.)

We interpret the trial court's words as incorporating an implicit finding of a likelihood dismissal of Tamayo's strike would result in future "physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) The

11

statements we have underscored support this view. Plainly, the court's decision was motivated by the violent nature of Tamayo's offenses. It characterized his offense conduct as "destructive to society" and expressed concern that "multiple victims" had been "scarred psychologically," all of which falls under the category of "serious danger to others." (*Ibid.*) Nor did the court appear to focus only on Tamayo's *current* dangerousness. Its statement about disagreeing with the "low to moderate risk" found in the psychological evaluation is a clear reference to Tamayo's risk of recidivism, a forward-looking concern. Further, before the court began the colloquy set forth above, it confirmed it intended to impose a total term of imprisonment of six years. Implicitly, in declining to dismiss the prior strike, the court considered "how the dismissal of the [strike would] impact the length of [Tamayo's] sentence" (*Gonzalez, supra*, __ Cal.App.5th at p. __ [2024 Cal.App.Lexis 409, *16]) and found a likelihood a shorter sentence would result in "serious danger to others" (§ 1385, subd. (c)(2)).

In interpreting the trial court's colloquy as reflecting a failure to find a likelihood of future physical injury or other serious danger to others, Tamayo ignores the court's repeated emphasis of the violent nature of his prior and current offenses and fails to recognize the court's disagreement with the psychological evaluation's violent recidivism assessment signaled an implicit finding of future dangerousness. Because we consider these statements material to discerning what the court was implicitly finding, we reject his interpretation.

Tamayo also advances several arguments in an effort to establish that the trial court misapplied the statute, but they are not persuasive. First, he asserts that although the trial court stated his youth would keep him "at the low term," the court actually imposed the middle term. Although he does not

12

develop his argument further, we interpret Tamayo to be saying the court based its evaluation of his future dangerousness on an incorrect base prison term. We disagree; in our view, the court simply misspoke. Before beginning its colloquy, the court confirmed that the six-year sentence it intended to impose consisted in part of the middle term of two and one-half years, doubled for the prior strike. The record thus reveals the court was aware of Tamayo's potential release dates with and without the strike. After completing the colloquy, in pronouncing Tamayo's sentence, the court stated, "I'll sentence him to the low term of -- I apologize -- the midterm of two and a half years[.]" Reading the record as a whole, we do not believe the court had the wrong future release dates in mind when it decided not to dismiss the strike.

Second, Tamayo asserts that "striking the strike prior, alone, would not have resulted in [his] immediate release" and the trial court "could have imposed a prison sentence of three years and six months." Again, he does not develop his argument, and we do not see how his assertions demonstrate error. The record shows the court was aware dismissal of the strike would not have resulted in Tamayo's immediate release, and that it was choosing between a three and one-half year sentence (the middle term of two and one-half years for the attempted carjacking plus one year consecutive for the elder victim enhancement) versus a sentence of six years (consisting of the same middle term, doubled for the strike, plus the enhancement). That the court could have imposed a lesser sentence does not, on its own, demonstrate that it erred by declining to do so.

Third, Tamayo asserts the trial court's "focus on *past* victims as well as its generalized concern for the 'destruction of society' " demonstrate its failure to find a likelihood of future "physical injury or other serious danger to

13

others." (§ 1385, subd. (c)(2).) We disagree. In addition to expressing concern over the victims of Tamayo's past and present crimes, which it described as "destructive to society," the court also stated it disagreed with the December 2020 psychological report describing Tamayo's risk of violent recidivism as low to moderate. Implicit in the latter statement is a finding it was likely Tamayo would commit violent offenses in the future.[6]

For these reasons, we reject Tamayo's claim the trial court misapplied the "endanger public safety" clause of section 1385, subdivision (c)(2). Having concluded the court properly applied this clause, we do not need to reach Tamayo's next contention that the court misapplied the statutory "afford great weight" standard, which is triggered only in the event the sentencing court does not find dismissal would "endanger public safety." (*Ibid.*)

We further observe the People identify an additional reason why the trial court did not err: in denying Tamayo's request for dismissal under section 1385, subdivision (c), the court necessarily found it was not "in the furtherance of justice" to dismiss the strike. (*Id.*, subd. (c)(1).) Tamayo did not challenge the validity of this implied finding in his opening brief on appeal, which is an independent basis for concluding he fails to establish the court's refusal to dismiss his strike violated section 1385, subdivision (c).[7]

---

[6]     In his reply brief, Tamayo appears to dispute whether the handgun he used to commit the prior strike was real because the victim thought it was fake. We observe the record reflects Tamayo admitted personal use of a dangerous and deadly weapon (§ 12022, subd. (b)(1)) as well as personal use of a firearm (§ 12022.53, subd. (b)) when he was adjudicated of the prior strike. We reject Tamayo's apparent effort to collaterally attack the factual basis of this adjudication.

[7]     The People also contend the trial court's sentencing decision was not an abuse of discretion because Tamayo's case falls "within the spirit of the Three Strikes law." We do not reach this contention, as Tamayo's appeal challenges

14

(*Mazur*, *supra*, 97 Cal.App.5th at p. 447 [where the trial court "explicitly found that dismissal was *not* in the interest of justice" and defendant did not contest that finding, defendant failed to demonstrate any error in court's refusal to dismiss his sentencing enhancement under § 1385, subd. (c).]; *People v. Collins* (2020) 52 Cal.App.5th 627, 634, fn. 4 [failure to raise argument in opening brief forfeits ability to make argument in reply].)[8]

## DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

---

the validity of the court's decision under subdivision (c), not subdivision (a), of section 1385. (See *People v. Williams* (1998) 17 Cal.4th 148, 161 [in ruling whether to dismiss a prior strike " 'in furtherance of justice' " under § 1385, subd. (a), a trial court must consider whether the defendant may be deemed outside the spirit of the Three Strikes law].)

[8] For the first time in reply, Tamayo contends the trial court's remarks reflect that it refused to consider his addiction, mental health disorder, youth, and childhood trauma; he appears to suggest it therefore abused its discretion in finding it was not in furtherance of justice to dismiss his prior strike. In addition to being forfeited, the position lacks merit because the court's remarks do not reflect a failure to consider these factors.

15